**SUPERIOR COURT OF WASHINGTON COUNTY OF KING**

| | |
|---|---|
| SPENCER ALPERT,<br><br>Plaintiff,<br><br>V<br><br>Nationstar Mortgage LLC, a Delaware Limited Liability Company, Harwood Service Company a Delaware Corporation, American Security Insurance Company a Delaware Corporation, Standard Guaranty Insurance Company a Delaware Corporation and Assurant Inc, a Delaware Corporation<br><br>Defendants | No:<br><br>COMPLAINT FOR BREACH OF THE WASHINGTON CONSUMER PROTECTION ACT, BREACH OF CONTRACT, UNJUST ENRICHMENT, BREACH OF THE TRUTH IN LENDING ACT. BREACH OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT |

Comes now the Plaintiff and alleges as follows:

## I. NATURE OF ACTION

1. The Plaintiff brings the following action against defendants for breach of various statutes and common law claims arising from kickbacks and other illegal charges concealed from Plaintiff Spencer Alpert by defendants in a scheme to charge unearned fees while



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

procuring and placing forced place insurance related to a loan secured by his primary residence.

## II. PARTIES AND JURISDICTION

2. Since 2006, Plaintiff Spencer Alpert has owned a home located at 10218 Richwood Ave NW, in Seattle, in King County, Washington. At various times, Nationstar has force-placed the referenced insurance on the Plaintiff's home.

3. Defendant Nationstar Mortgage, LLC ("Nationstar") is a Texas-based limited liability company organized in Delaware. It services a large number of loans in Washington and elsewhere in the United States, including the loan encumbering Mr. Alpert's residence in King County.

4. Defendant Harwood Servicing Company LLC ("Harwood") is an affiliate of Nationstar with its principle place of business in Lewisville, Texas. Upon information and belief, Harwood's sole function is to serve as the captive insurance broker for Nationstar. Harwood performs no substantive functions related to the procurement of force-placed insurance coverage form of insurance. Notwithstanding the foregoing, Harwood collects fees nominally called "commissions" which are tied to a percentage of the cost of each force-placed insurance premium. In truth and in fact this "commission" is actually an illegal kickback to which defendant Harwood is not entitled, and as a final step in this scheme, the cost of this illegal kickback is passed on to the borrower, in this instance the plaintiff, Spencer Alpert. Nationstar Mortgage LLC and Harwood Servicing Company are referred to collectively in this complaint as the "Nationstar Defendants".



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

5. Defendant Assurant Inc., ("Assurant") is a Delaware Corporation with its principle office in New York, New York. Assurant participates in the force-place insurance market across the United States.

6. Defendant American Security Insurance Company, ("ASIC") is a Delaware corporation which is effectively owned and controlled by Assurant.

7. Defendant Standard Guaranty Insurance Company ("SGIC") is a Delaware Corporation effectively owned by Assurant. The three defendants Assurant, ASIC and SGIC are collectively referred to as the "Assurant defendants".

8. Venue is proper in King County, Washington because Plaintiff is domiciled in King County and the significant acts that constitute the basis for this litigation occurred in King County.

## III. BACKGROUND FACTS

### A. NATIONSTAR PRACTICES REGARDING THE PLACEMENT OF FORCED-PLACE INSURANCE ON CONSUMERS.

9. Lenders and servicers force place insurance when a borrower fails to obtain or maintain proper hazard, flood, or wind insurance coverage on property that secures a loan. Under the typical mortgage agreement, if the insurance policy lapses or provides insufficient coverage, the lender has the right to "force place" a new policy on the property and then charge the insurance premiums to the borrower.

10. However, mortgage lenders and servicers, like Nationstar, have set up questionable and often illegal practices related to force-placed insurance. The lenders and servicers have entered into exclusive and collusive relationships with certain force-



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

placed insurance providers, here Assurant, ASIC and SGIC, that result in exceptional profits to both the servicers or lenders as well as the force-placed insurers.

11. The arrangements comprise an extremely lucrative profit-making scheme of kickbacks that charges unearned fees from unsuspecting borrowers and reaps hundreds of millions of dollars annually for its participants. There are just two insurance companies that control nearly the entire market for forced-placed policies in the country— Assurant and QBE, an Australian Company which established US offices in the 1990's. Assurant works through its subsidiaries, including ASIC and SGIC. The scheme works like this: these companies and their affiliates enter into exclusive relationships with the major mortgage lenders and servicers to provide the policies. To maintain their exclusive relationships with these lenders, the insurers pay them unearned "kickbacks," in the form of direct payments (disguised as "commissions" or reimbursements for certain costs) or in the form of a percentage of the force- placed policy premiums which are then wrongfully charged to the borrower. Pursuant to the aforementioned scheme, insurers then offer lenders/ servicers subsidized or discounted administrative services, and/or enter into lucrative captive reinsurance deals with them.

12. The money to finance the force-placed insurance schemes comes from unsuspecting borrowers who are charged substantially inflated premiums for force-placed insurance by lenders or servicers – Nationstar, here. In many instances, borrowers are required to pay for backdated insurance coverage to cover already-passed periods during which the lender or servicer already knows to a certainty that no claims were made or for insufficient coverage that exceeds the legal requirements. All of the foregoing generate



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

exorbitant and improper fees which are then charged to the borrower who has been kept in the dark as to the true nature of the transaction.

13. The Defendants' force-placed insurance scheme takes advantage of the broad discretion afforded the lenders and/or servicers in standard form mortgage agreements. The agreements typically require the borrower to carry hazard insurance sufficient to cover the lender's interest in the property against fire and other perils. If a homeowner's "voluntary" policy lapses, the mortgage agreement allows the lender to "force place" a new policy on the property at the borrower's expense.

14. Although force-placed insurance is designed to protect the lender's interest in the property that secures the loan, unscrupulous lenders have seized the opportunity to tailor such policies toward "double-coverage", such that they often purchase coverage from their exclusive insurers in excess of that required to cover their own risk. Moreover, it is common practice of Nationstar and similarly situated lenders and servicers to collude with the two major force-placed insurers, Assurant and QBE, to manipulate the force-placed insurance market, which consequently leads to self-serving and artificially inflated premiums as well as other charges to consumers. This results in premiums up to ***ten times*** greater than those available to the consumer in the open market. The insurance in question is most often woefully inadequate in affording protection for the homeowner and his or her home. As a consequence of this combination of minimal or no risk coverage combined with hyper-extreme premium charges, lenders, servicers, force-placed insurers, and their affiliates thereby reap unconscionable profits entirely at the expense of the unsuspecting borrower; in this case, Plaintiff, Spencer Alpert.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

15. Assurant, a named defendant here, is one of the two major insurance companies that control virtually the entire market for force-placed insurance. Assurant held 58.6% of the nationwide market share for force-placed insurance in 2011. Together, Assurant and QBE, the other major insurer with a significant market share, controlled 99.7% of the market in the same year and held no less than 96.1% of the market between 2004 and 2011. Large mortgage lenders and servicers sustain the insurers' monopoly by agreeing to purchase all force-placed insurance from the two insurers in exchange for kickbacks and other benefits.

16. It is no surprise that practices typical to the Nationstar Defendants' have come under increased scrutiny in recent years by the government and other regulators. For example:

- On March 21, 2013, the New York Department of Financial Services' ("NYDFS"), investigation into force-placed insurance practices "produced a major settlement with the country's largest 'force-placed' insurer, Assurant, Inc. . . . [The settlement] includes restitution for homeowners who were harmed, a $14 million penalty paid to the State of New York, and industry-leading reforms that will save homeowners, taxpayers, and investors millions of dollars going forward through lower rates."[1] Further, under the Consent Order entered, Assurant and its subsidiaries (including ASIC and SGIC), are prohibited from paying commissions to any servicers or entity affiliated with a servicer on force-placed insurance policies obtained by the servicer. *See* Assurant & NYDFS Consent Order, Mar. 21, 2013, at 9.

- At NYDFS hearings on May 17, 2012 related to the force-placed insurance market, the Superintendent of Financial

[1] *See Cuomo Administration Settles with Country's Largest Force-Placed Insurer, Leading Nationwide Reform Effort and Saving Homeowners, Taxpayers, and Investors Millions of Dollars*, Dep't of Fin. Servs., Mar. 21, 2013, *available at*, http://www.dfs.ny.gov/about/press2013/pr1303211.htm.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

Services, Benjamin Lawsky, stated that the Department's initial inquiry uncovered "serious concerns and red flags" which included: 1) exponentially higher premiums, 2) extraordinarily low loss ratios, 3) lack of competition in the market, and 4) tight relationships between the banks, their subsidiaries, and insurers. He went on to state:

> In sum when you combine [the] close and intricate web of relationships between the banks and insurance companies on the one hand, with high premiums, low loss ratios, and lack of competition on the other hand, it raises serious questions . . . .

- After August 2012 NAIC hearings on force-placed insurance, the state regulator from Louisiana, James Donelon, referred to the force-placed insurance market as a "monopoly" and stated that stricter regulations may be needed.[2]

- On December 18, 2013, Fannie Mae issued its Servicing Guide Announcement related to force-placed insurance that, among other things, prohibits servicers from including any commissions, bonuses, or other incentive compensation in the amounts charged to borrowers for force-placed insurance and further requires that the force-placed insurance carrier cannot be an affiliated entity of the servicer.[3]

17. While Defendants' self-dealing and collusion in the force-placed insurance market has caused substantial harm to many borrowers, the current litigation is, of necessity styled and crafted solely to redress the harm imposed on Plaintiff, Spencer Alpert by Defendants, and to recapture from and penalize Defendants for the improper costs incurred by said Plaintiff which are specifically related to the forced placement of insurance by Nationstar Defendants and the Assurant Defendants in this instance.

---

[2] *See* Z. Tracer & D. Beasley, *U.S. Regulators to Examine Forced-Place Insurance*. BLOOMBERG BUSINESSWEEK, Aug. 10, 2012, *available at*, http://www.bloomberg.com/news/2012-08-10/u-s-regulators-to-examine-forced-place-insurance.html.

[3] *See* https://www.fanniemae.com/content/announcement/svc1327.pdf



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

18. Permitting a lender to forcibly place insurance on a mortgaged property and charge the borrower the full cost of the premium is neither a new concept nor a term undisclosed to borrowers in mortgage agreements. The standard form mortgage agreements serviced by Nationstar include a provision requiring the borrower to maintain hazard insurance coverage, flood insurance coverage if the property is located in a Special Flood Hazard Area as determined by the Federal Emergency Management Agency, and wind insurance on the property securing the loan, and, in the event the insurance lapses, permit the lender or servicer to obtain force- placed coverage and charge the amounts to the borrower rather than declare the borrower in default.

19. What is unknown to borrowers, and not disclosed to Plaintiff Spencer Alpert specifically in his mortgage agreement is that Nationstar has exclusive arrangements with Assurant and its affiliates, including ASIC and SGIC, in order to manipulate the force-placed insurance market and artificially inflate the premiums and then pass the improperly inflated amounts onto the borrowers. The premiums are inflated to provide the Nationstar Defendants and affiliates with kickbacks in the form of "commissions" or direct payments, or to provide the Nationstar Defendants with lucrative reinsurance arrangements, or are inflated to cover the cost of discounted services, as well as to include other unmerited charges. The borrower is then charged the inflated amounts.

**<u>The Force-Placed Insurance Scheme</u>**

20. The Assurant Defendants have exclusive arrangements with Nationstar to monitor its mortgage portfolio and provide force-placed insurance. In addition



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

to the subsidized mortgage services they receive from the Assurant Defendants, Nationstar and/or its affiliate Harwood Service are kicked back a percentage of the force-placed premium or are paid direct payments for the exclusive relationship often disguised as expense reimbursements. The Nationstar Defendants receive additional compensation through captive reinsurance arrangements.

21. The scheme works as follows: Nationstar purchases master or "umbrella" insurance policies that cover its entire portfolio of mortgage loans. In exchange, the Assurant Defendants are given the exclusive right to force insurance on property securing a loan within the portfolio when the borrower's insurance lapses or the lender determines the borrower's existing insurance is inadequate. Assurant and its affiliates monitor Nationstar's entire loan portfolio for lapses in borrowers' insurance coverage. Once a lapse is identified, an Assurant affiliate sends notice to the borrower that insurance will be "purchased" and force-placed if the voluntary coverage is not continued. If a lapse continues, the insurer notifies the borrower that insurance is being force-placed at his or her expense.

22. No individualized underwriting ever takes place for the force-placed coverage. Insurance is automatically placed on the property and the premium charged to the borrower. In many instances, the insurance lapse is not discovered for months or even years after the fact. Despite the absence of any claim or damage to the property during the period of lapse, retroactive coverage is placed on the property and the borrower is charged for the "cost" of the past premiums.

23. Once coverage is forced on the property, Nationstar pays the insurer for the premium and then charges the borrower for the payment, which is either deducted

Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

from the borrower's mortgage escrow account or added to the balance of the borrower's loan. The borrower's escrow account is depleted irrespective of whether other escrow charges, such as property taxes are also due and owing.

24. After Nationstar pays the premiums to the Assurant Defendants, they kick back a set percentage to Nationstar and/or its affiliate Harwood Service as a "commission." Upon information and belief, Harwood Service shares a percentage of that payment with Nationstar, sometimes in the form of "soft dollar" credits.

25. The money paid back to the Nationstar Defendants is not given in exchange for any services provided by them; it is simply "grease" paid to keep the force-placed machine moving. In an attempt to mask the kickback as legitimate, Assurant and ASIC disclose to the borrower (on Nationstar letterhead) that Nationstar or its affiliate Harwood Service may earn commissions or income as a result of the forced placement of coverage. What is not disclosed is that these bear no similarity to typical commissions that are a normal component of insurance agent/insurance carrier relationships with which the borrower is typically familiar. In reality, no substantive work is ever done by Nationstar or Harwood Service to procure insurance for that particular borrower as appears on the surface because the coverage comes through the master or umbrella policy already in place due to the exclusive relationship in place. As a result, no commission or income is actually "earned."

26. Under this highly profitable force-placed insurance scheme, the Nationstar Defendants are incentivized to purchase and force place insurance policies with artificially inflated premiums on borrowers' properties because the higher the cost of the insurance policy, the higher the kickback they receive. Moreover, with little or no



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

risk of an actual payout to the borrower resulting from a loss, the inflated premium is akin to "free money" to Nationstar the cleverness and extreme nature of the scheme's profitability is enhanced even more when, as is the case with Nationstar in the current litigation, the "profit" is steered through Harwood to a servicer of the loan whose loan risk pursuant to its servicing agreement with the lender is extremely limited vis-a-vis the actual lender itself.

27. The Assurant and the Nationstar Defendants also enter into agreements for the Assurant Defendants to provide servicing activities on Nationstar's entire loan portfolio at below cost. The servicing costs are added into the force-placed premiums which are then passed on to the borrower. The insurers are able to provide these services at below cost because of the enormous profits they make from the hyper-inflated premiums charged for force-placed insurance combined with the practically non-existent loss payouts to legitimate independent insureds on the part of the Assurant Defendants. Accordingly, because insurance-lapsed mortgaged property comprises only 1-2% of the lenders' total mortgage portfolio, the borrowers who pay these premiums unfairly bear the entire cost to service the entire loan portfolio. These charges, in this instance passed on to Plaintiff Spencer Alpert were not properly chargeable to Plaintiff because they are expenses associated with Nationstar's servicing of all its loans, and the loan servicer is already compensated for these activities pursuant to its loan servicing agreement with the owner of the mortgage contract.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

28. The small percentage of borrowers who are charged for force-placed insurance thereby shoulder the costs of monitoring Nationstar's entire loan portfolio, effectively resulting in a global kickback to Defendants.

29. In addition, on information and belief, the Assurant Defendants entered into an essentially riskless "captive reinsurance arrangement" with the Nationstar Defendants to "reinsure" the property insurance force-placed on Plaintiff's home. A recent *American Banker* article illustrated this reinsurance problem using JPMorgan Chase's program by way of example:

> JPMorgan and other mortgage servicers reinsure the property insurance they buy on behalf of mortgage borrowers who have stopped paying for their own coverage. In JPMorgan's case, 75% of the total force-placed premiums cycle back to the bank through a reinsurance affiliate. This has raised further questions about the force-placed market's arrangements. . . .
>
> Over the last five years, Chase has received $660 million in reinsurance payments and commissions on force-placed policies, according to New York's DFS. . . .
>
> Of every hundred dollars in premiums that JPMorgan Chase borrowers pay to Assurant, the bank ends up keeping $58 in profit, DFS staff asserted. The agency suggested the bank's stake in force-placed insurance may encourage it to accept unjustifiably high prices by Assurant and to avoid filing claims on behalf of borrowers, since that would lower its reinsurer's returns.
>
> The DFS staff also questioned the lack of competition in the industry, noting that Assurant and QBE have undertaken acquisitions that give them long-term control of 90% of the market. Further limiting competition are the companies' tendency to file identical rates in many states, Lawsky and his staff argue.[4]

[4] J. Horwitz, *Chase Reinsurance Deals Draw New York Regulator's Attacks*, AM. BANKER, May 18, 2012, *available at* http://www.americanbanker.com/issues/177_97/chase-reinsurance-deals-regulator-attack-1049460-1.html.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

30. Upon information and belief, Nationstar's reinsurance program, like those of JP Morgan Chase and other servicers or lenders, is simply a way to funnel profits, in the form of ceded premiums, to Nationstar at borrowers' expense, and in the present case at Plaintiff Alpert's expense. While reinsurance can, and often does, serve a legitimate purpose, here it does not. The Nationstar Defendants and/or their affiliates enter into reinsurance agreements with the Assurant Defendants that provide that the insurer will return to the Nationstar Defendants significant percentages of the premiums charged borrowers by way of ceded reinsurance premiums to the Nationstar Defendants or their affiliates or subsidiaries. The ceded premiums are nothing more than a kickback to the Nationstar Defendants and a method for Defendants to profit from the forced placement of new coverage. Indeed, while the Nationstar Defendants and/or their affiliates purportedly provided reinsurance, they did not assume any real risk.

31. Nationstar also overcharges borrowers by disregarding the Standard Mortgage Clause or the Lender's Loss Payable Endorsement ("LLPE") in the standard form mortgage agreement. Either of these clauses typically protects the lender for a period of at least ten days after the termination of the homeowner's voluntary insurance policy. Force-placed policies, however, take effect on the date of termination, and "double-cover" the property unnecessarily during the period covered by the LLPE or Standard Mortgage Clause. This means the borrower is charged for coverage for which the lender or servicer has no exposure.

32. The amounts charged borrowers are also inflated by the interest that accrues on the amounts owed for force-placed coverage; when Nationstar adds the cost of the



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

high-priced premium to a homeowner's mortgage balance, it thereby increases the interest paid over the life of the loan by the homeowner to Nationstar.

33. The actions and practices described above are unconscionable and undertaken in bad faith with the sole objective to maximize profits. Borrowers who for whatever reason have stopped paying for insurance or are under-insured on mortgaged property are charged hyper- inflated and illegitimate noncompetitive amounts for force-placed insurance. These charges are inflated to include the undisclosed kickbacks to the Defendants or their affiliates (who, as described above, perform little to no functions related to the force-placement of the individual policies), as well as the cost of captive reinsurance arrangements, and discounted administrative services.

34. Borrowers have no say in the selection of the force-placed insurance carrier or the terms of the force-placed insurance policies. Force-placed policies are commercial insurance policies and are intended for the lender or servicer – in this instance, Nationstar. The terms are determined by the Nationstar and Assurant Defendants and provide less coverage than a standard voluntary policy – for example, the force-placed policies which are subject of this litigation do not provide Plaintiff with coverage for personal property or liability, which is typically included with standard insurance policies.

35. Plaintiffs here do not challenge the Nationstar's right to force place insurance in the first instance. They challenge Defendants' manipulation of the force-placed insurance market with an eye toward artificially inflating premiums and placing unnecessary coverage, which Nationstar purchases from the Assurant Defendants and then chooses to pass on to the borrower. Servicers, like Nationstar, are financially



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

motivated to utilize the insurer, like the Assurant Defendants here, that offers them the best financial benefit in the terms of "commissions," direct payments, discounted tracking services, or ceded reinsurance premiums. The Nationstar Defendants have no more right to charge Plaintiff Alpert for illegal kickbacks disguised as commission and inflated premiums than they would to siphon funds from Plaintiff's checking or savings account converted to their personal or corporate use. This action seeks to put an end to Defendants' exclusive, collusive, and uncompetitive arrangements, and to recover for Plaintiff Spencer Alpert the excess amounts charged beyond the true cost of applicable insurance coverage.

**Specifics as to**
**Spencer Alpert**

36. In 2006 Plaintiff Alpert obtained a mortgage loan that at all relevant times was serviced by Nationstar.

37. Mr. Alpert's mortgage agreement includes a provision that states as follows:

> **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. The insurance shall be maintained in the amounts … and for the periods that Lender requires.
>
> *
> *
> *
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability, and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

> Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of the Borrower secured by this Security Instrument ....

38. Prior to Nationstar's taking over the servicing of Plaintiff Alpert's loan in 2012, Mr. Alpert had a voluntary insurance policy with Safeco Insurance Company. At that time, Mr. Alpert's voluntary insurance with Safeco lapsed because Safeco required repairs to be made to the property that were not completed.

39. On September 20, 2012, the Assurant Defendants, by way of Nationstar letterhead, sent a Notice of Placement informing Mr. Alpert that Nationstar had force-placed a hazard insurance policy binder on his property retroactive to July 3, 2012 and that the annual premium of $5,088.00 would be charged to his escrow account. A copy of this binder is attached as Exhibit A. On October 30, 2012, Nationstar extended the forced-place insurance policy through July 2013. Similar insurance at varying rates were subsequently charged to plaintiff in 2013 and 2014.

40. The Nationstar and Assurant letters for each year state that the force- placed insurance coverage "will be obtained with the assistance of Harwood Service Company LLC" and that Harwood Service "will receive a commission on the insurance we obtain."

41. In fact, Harwood Service provides no services related to the procurement of individual policies, as they are issued pursuant Nationstar's master or umbrella policy, and the so-called "commission" is in truth, a kickback by the Assurant defendants to the Nationstar Defendants

42. According to Defendant Nationstar's records recently obtained by Plaintiff between October 23 2012 and July 8, 2014, Nationstar has charged Plaintiff, $17,318.00 for


Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

force-placed insurance issued by Assurant Defendants. In addition, Nationstar has directly and unilaterally charged Plaintiff's interest on this amount from the inception of the scheme perpetrated on Plaintiff in 2012 through the present date.

43. At no time did any defendant disclose to Mr. Alpert that the amounts charged him covered kickbacks to the Nationstar Defendants, reinsurance profits, bundled administrative costs, or any of the other impermissible charges described in this complaint.

44. On June 10, 2015 Plaintiff Alpert obtained a quote for standard insurance on his home from Commerce West Insurance Company for an annual premium of $1,369.00 - similar to what he was previously paying to Safeco. It is notable that the Commerce West Insurance coverage includes personal property, liability and other risk coverage included in the Nationstar/Assurant defendant force-placed policies.

**BREACH OF CONTRACT**
**(against Nationstar)**

45. Plaintiff re-alleges and incorporates prior paragraphs above as if fully set forth herein and further alleges as follows.

46. Plaintiff's mortgage requires that he maintain insurance on his property and provides that if he fails to do so, then lender may obtain insurance coverage to protect its interest in the property, "force place" the coverage, and charge the borrower the cost.

47. Nationstar, purporting to be the "lender", or successor in interest thereto and/or authorized representative of Lender as defined in Plaintiff's mortgage agreement, charges Plaintiff's amounts for force-placed insurance that include unearned "commissions" or kickbacks, reinsurance premiums, as well as discounted administrative, servicing, and other impermissible costs. These costs are not costs of



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

coverage, and are not applied to protecting any demonstrable right or risk related to Nationstar's rights or risk in the collateral for borrowers' mortgage loan. Nationstar breached the mortgage agreements by, among other things, charging Plaintiff amounts beyond the actual cost of coverage.

48. Nationstar has also breached Plaintiff's mortgage agreement by charging Plaintiff for excess and unnecessary force-placed insurance coverage, including retroactive coverage, as such coverage does not, in fact protect Nationstar's rights in the collateral, if any, or cover their risk beyond coverage pre-dating the force-placed coverage.

49. Plaintiff has suffered damages as a result of the Nationstar' breaches of contract.

**COUNT II**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (against Nationstar)**

50. Plaintiff re-alleges preceding paragraphs above as if fully set forth herein and further alleges as follows.

51. A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

52. Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

to act capriciously to contravene the reasonable contractual expectations of the other party.

53. Plaintiff's mortgage contract allows Lender (and according to Nationstar, Nationstar) to force place insurance coverage on the borrower in the event of a lapse in coverage, but does not define standards for selecting an insurer or procuring an insurance policy.

54. Lender/Nationstar is afforded substantial discretion in force-placing insurance coverage. It is permitted to unilaterally choose the company from which it purchases force-placed insurance and negotiates any price for the coverage it procures. Servicers, like Nationstar, have an obligation to exercise the discretion afforded it in good faith, and not capriciously or in bad faith. Plaintiff does not seek to vary the express terms of the mortgage contract, but only to insure that Lender or Nationstar, acting it its place, exercises its discretion in good faith.

55. Nationstar breached the implied covenant of good faith and fair dealing by, among other things:

> (a) Manipulating the force-placed insurance market by selecting insurers (here, Assurant and its affiliates) that will artificially inflate premiums to include kickbacks to Nationstar or its affiliates and issue excess insurance coverage not necessary to cover Nationstar's risk, and by failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby insurance coverage is routinely purchased from Assurant and its affiliates without seeking a competitive price;
>
> (b) Exercising their discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting commercial force-placed insurance policies with artificially inflated premiums to maximize their own profits;



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

(c) Assessing and imposing inflated and unnecessary commercial insurance policy charges against Plaintiff and misrepresenting the reason for the cost of the policies;

(d) Allowing Nationstar or its affiliates to collect a percentage of the amounts charged to Plaintiff as a kickback and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced force-placed policies possible;

(e) Charging Plaintiff for commissions when the insurance is prearranged and no commission is due;

(f) Charging Plaintiff the cost of having the vendor perform its obligation of administering its mortgage portfolio, which is not properly chargeable to Plaintiff;

(g) Force placing insurance coverage outside of what is required by law or necessary to protect Nationstar's interests as provided in Plaintiff's mortgage agreement; and

(h) Charging Plaintiff inflated charge for the force-placed insurance due to direct payments from the Assurant Defendants or the captive reinsurance arrangement.

56. As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff has suffered damages.

**COUNT III**

**UNJUST ENRICHMENT**
**(against the Nationstar Defendants)**

57. Plaintiff re-alleges and incorporate paragraphs above as if fully set forth herein and further allege as follows.

58. The Nationstar Defendants received from Plaintiff benefits in the form of percentages of the inflated insurance premiums related to force-placed insurance policies, including unwarranted kickbacks and commissions, captive reinsurance arrangements, and subsidized loan servicing costs.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

59. The Nationstar Defendants entered into agreements whereby the insurance vendors—here, Assurant's subsidiaries, ASIC and SGIC—would provide force-placed insurance policies to Nationstar for the portfolio of loans monitored on behalf of the Nationstar Defendants. The Nationstar Defendants then charged Plaintiff amounts for the force-placed insurance that had been artificially inflated to include costs not properly chargeable to Plaintiff. The force-placed policies imposed on Plaintiff were therefore far more expensive than those available in the open market that provide even more coverage.

60. The Nationstar Defendants also collected amounts for the force-placed policies that provided coverage in excess of that required by law or Plaintiff's mortgage agreement, and in excess of that required to protect the Lender or Nationstar's interest in its collateral.

61. The Assurant Defendants were paid and collected significant monies in premiums, kickbacks, commissions, and reinsurance profits charged to the Plaintiff by Nationstar and tied directly to the cost of the force-placed insurance premium (as a percentage). Commissions or kickbacks were paid directly to the Nationstar Defendants in order to be able to exclusively provide force-placed insurance policies on plaintiff's home. The Assurant Defendants were mere conduits for the delivery of the kickbacks, "commissions," and other charges to the Nationstar Defendants.

62. These payments directly benefitted the Nationstar Defendants and were taken to the detriment of Plaintiff. The kickbacks and commissions, reinsurance profits, and subsidized costs were subsumed into the price of the insurance premium and ultimately charged to Plaintiff. Therefore, the Nationstar Defendants had the incentive to charge and collect unreasonably inflated prices for the force-placed policies.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

63. Further, Nationstar received financial benefits in the form of increased interest income, duplicative insurance based upon the Lender Loss Payable Endorsement or the Standard Mortgage Clause, and/or "soft-dollar" credits.

64. As a result, Plaintiff has conferred a benefit on the Nationstar Defendants.The Nationstar Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on it.

65. The Nationstar Defendants will be unjustly enriched if allowed to retain the aforementioned benefits, and Plaintiff is entitled to recover the amount by which these Defendants were unjustly enriched at his expense.

**COUNT IV**

**UNJUST ENRICHMENT (against Assurant and American Security)**

66. Plaintiff re-alleges and incorporates paragraphs above as if fully set forth herein and further alleges as follows.

67. The Assurant Defendants received from Plaintiff benefits in the form of funds for insurance premiums related to force-placed insurance policies.

68. The Assurant Defendants received below-cost payments from Nationstar for providing tracking services but included the entire cost of that tracking service in the premiums for force-placed insurance that were ultimately charged by Nationstar to Plaintiff. The Assurant Defendants knew that the amounts would be ultimately charged to the borrower and passed through to them but did not reduce the charges by the amounts paid to them from Nationstar for the tracking services. Thus, the Assurant Defendants were unjustly enriched.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

69. The Assurant Defendants paid significant monies to the Nationstar Defendants in kickbacks, commissions, and reinsurance profits tied directly to the cost of the force-placed insurance premium (as a percentage). Commissions or kickbacks were paid directly to the Nationstar Defendants in order to be able to exclusively provide force-placed insurance policies and receive the corresponding insurance premiums.

70. Nationstar also collected amounts for premiums on force-placed policies that provided coverage in excess of that required by law or Plaintiff's mortgage agreement, and in excess of that required to protect the Lender's or Nationstar's interest in its collateral, Plaintiff's home.

71. Nationstar acted as a mere conduit for the delivery of insurance premiums to the Assurant Defendants. As a result, Plaintiff has conferred a benefit on the Assurant Defendants.

72. These Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

73. These Defendants will be unjustly enriched if they are allowed to retain the aforementioned benefits, and Plaintiff is entitled to recover the amount by which these Defendants were unjustly enriched at his expense.

## COUNT V

## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT

74. Plaintiff re-alleges paragraphs above as if fully set forth herein and further alleges as follows.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

75. The Washington Consumer Protection Act, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86 et. seq.

76. Plaintiff is a "consumer" under the act.

77. Nationstar has engaged in, and continues to engage in, unconscionable acts or practices and has engaged in unfair or deceptive acts in the conduct of its trade and/or commerce in the State of Washington.

78. The policies, acts, and practices alleged herein were intended to result and did result in the payment of inflated charges for force-placed insurance policies by the above-named Plaintiff and other Washington consumers which in turn were intended to generate unlawful or unfair compensation for Nationstar.

79. Specifically, Nationstar had an exclusive relationship with its vendor and preferred insurance carriers, Assurant, whereby it would pay unreasonable and inflated premiums for force-placed insurance policies, charge that amount to Plaintiff and other Washington Consumers, and then receive compensation through kickbacks, discounted services, or captive reinsurance arrangements.

80. Nationstar's conduct of charging inflated amounts for their force-placed insurance to Plaintiffs and members of the class violates the Washington Consumer Protection Act and was conceived, devised, planned, implemented, approved, and executed within the State of Washington, which has an interest in prohibiting violations of the Act.

81. Plaintiff and other Washington consumers have sustained damages as a direct and proximate result of Nationstar's unfair and deceptive acts and practices.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

82. Plaintiff and Washington consumers have suffered and will continue to suffer irreparable harm if Nationstar continues to engage in such unfair and deceptive acts and practices.

**COUNT VI**
**VIOLATIONS OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1601, *et seq.***
**(against Nationstar)**

83. Plaintiff re-alleges and incorporates paragraphs above as if fully set forth herein and further alleges as follows.

84. Plaintiff's mortgage was a consumer credit plan secured by his principal dwelling, and was subject to the disclosure requirements of TILA, 15 U.S.C. § 1601, *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

85. Nationstar is a "creditor" as defined by TILA because it owned or serviced Plaintiff's mortgage and changed the terms of the mortgage so as to create a new mortgage obligation, of which Nationstar was the creditor.

86. Pursuant to TILA, Nationstar was required to accurately and fully disclose the terms of the legal obligations between the parties. *See* 12 C.F.R. § 226.17(c).

87. Nationstar violated TILA, specifically 12 C.F.R. § 226.17(c), when it: (i) added force-placed insurance to Plaintiff's mortgage obligation and failed to provide new disclosures; and (ii) failed at all times to disclose the amount and nature of the kickback, reinsurance, discount loan monitoring, and/or other profiteering involving Nationstar and/or its affiliates as a result of the purchase of force-placed insurance.


Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

88. When Nationstar changed the terms of Plaintiff's mortgage to allow previously unauthorized kickbacks and insurance amounts in excess of Nationstar's interests in the property, it changed the finance charge and the total amount of indebtedness, extended new and additional credit through force-placed insurance premiums, and thus created a new debt obligation. Under TILA, Nationstar was then required to provide a new set of disclosures showing the amount of the insurance premiums (*i.e.* finance charges) and all components thereof. On information and belief, Nationstar increased the principal amount under the mortgages when it force-placed the insurance, which was a new debt obligation for which new disclosures were required.

89. Nationstar adversely changed the terms of Plaintiff's loan after origination in order to receive kickbacks on force-placed insurance premiums. These kickbacks are not authorized in the mortgage in any clear and unambiguous way. Nationstar has never disclosed to Plaintiff the amount of the "commissions" or other unearned profits paid to itself or its affiliate.

90. Nationstar also violated TILA by adversely changing the terms of Plaintiff's loan after origination by requiring and threatening to force-place more insurance than necessary to protect its interest in the property securing Plaintiff's mortgage.

91. Acts constituting violations of TILA occurred within one year prior to the filing of the original Complaint in this action, or are subject to equitable tolling because Nationstar's kickback, reinsurance, and other unearned revenue-generating scheme was the subject of secret agreements among Nationstar and its affiliates and was concealed from Plaintiff.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

92. Plaintiff has been injured and has suffered a monetary loss arising from the Nationstar's violations of TILA

93. As a result of Nationstar's TILA violations, Plaintiff is entitled to recover actual damages and statutory damages.

94. Plaintiff is also entitled to recovery of attorneys' fees and costs to be paid by Nationstar, as provided by 15 U.S.C. § 1640(a)(3).

**COUNT VII**

**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP (against Assurant Defendants)**

95. Plaintiff re-alleges and incorporates paragraphs above as if fully set forth herein and further alleges as follows.

96. Plaintiff has advantageous business and contractual relationships with Nationstar pursuant to his mortgage contract resulting from Nationstar's loan servicing activities. Plaintiff has legal rights under his mortgage contract. For example, Plaintiff has a right not to be charged exorbitant charges in bad faith for forced-place insurance.

97. Assurant Defendants have knowledge of the mortgage contract and the advantageous business and contractual relationships between Plaintiff and Nationstar. Assurant defendants are not parties to the mortgage contracts, nor are they third-party beneficiaries of the mortgage contracts. Further, Assurant defendants do not have any beneficial or economic interest in the mortgage contracts.

98. Assurant defendants intentionally and unjustifiably interfered with Plaintiffs' rights under the mortgage contract, as described above, by, *inter alia*, entering into an



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

exclusive relationship with Nationstar and its affiliate, Harwood Services, whereby they provide compensation (kickbacks, reinsurance, and low cost services) to the Nationstar Defendants in exchange for the exclusive right to force-place inflated and unnecessary premiums which were purposefully and knowingly charged to Plaintiff.

99. Plaintiffs has been damaged as a result of the Assurant Defendants' interference with Plaintiff's mortgage contract by being charged bad faith, exorbitant, and illegal charges for force-placed insurance in contravention ofhis rights under the mortgage on his home.

## COUNT VIII

## BREACH OF FIDUCIARY DUTY (against Nationstar)

100. Plaintiff re-alleges and incorporates paragraphs above as if fully set forth herein and further alleges as follows.

101. Nationstar held funds in escrow on behalf of Plaintiff whose mortgage it services. These funds are designated for the purpose of paying insurance premiums as they come due, and any excess funds are to be returned to Plaintiff under the terms of the mortgage agreement.

102. Nationstar is in a fiduciary relationship with Plaintiff for two specific reasons, (1) because Nationstar receives a greater economic benefit from these transactions than they would from a typical escrow transaction; and (2) Specifically, the debtor-creditor relationship transformed into a fiduciary relationship when Nationstar took it upon itself to manage borrowers' escrow account and then withdrew and/or charged money to Plaintiff's escrow account for force-placed insurance charges, not properly chargeable to



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

Plaintiff. Nationstar violated its fiduciary duties when it arranged to receive unlawful kickbacks or other compensation under the kickback scheme, which is clearly a greater economic benefit than what was contemplated under the Plaintiff's mortgage agreement.

103. Nationstar breached its fiduciary duties to Plaintiff, by: (1) not acting in Plaintiff's best interest when it profited from force-placed insurance policies that were purchased using escrow funds it held for the benefit of Plaintiff and/or charging Plaintiff therefor at the expense of Plaintiff; and (2) not disclosing the kickback scheme to Plaintiff.

104. These actions were undertaken by Nationstar in bad faith for its own benefit and were not intended to benefit Plaintiff.

105. As a direct result of Nationstar's actions and subversion of Plaintiff's interest to its own in reaping extravagant and outrageous fees, Plaintiff has suffered injury in the form of unnecessary and inflated escrow charges and/or loss of funds from his escrow account.

**COUNT IX**

**Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)**

106. Plaintiff Alpert re-alleges and incorporates paragraphs above as if fully set forth herein and further alleges as follows.

107. At all relevant times, Defendants were employed by and associated with an illegal enterprise, and conducted and participated in that enterprise's affairs, through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications to execute a scheme to defraud, all in



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).

108. The RICO enterprise which engaged in and the activities of which affected interstate and foreign commerce, was comprised of an association in fact of entities and individuals that included the Nationstar Defendants and Assurant Defendants.

109. The members of the RICO enterprise had a common purpose: to increase and maximize their revenues by forcing Plaintiff to pay unreasonably high charges for force-placed insurance through a scheme that inflated the premiums to cover kickbacks and expenses associated with monitoring Nationstar's entire loan portfolio. Defendants shared the bounty of their enterprise, i.e., by sharing the premiums generated by the joint scheme.

110. The RICO enterprise functioned over a period of years as a continuing unit and had a maintained an ascertainable structure separate and distinct from the pattern of racketeering activity.

111. The Nationstar Defendants and Assurant Defendants conducted and participated in the affairs of this RICO enterprise through a pattern of racketeering activity that lasted more than one year, at a minimum, and that consisted of numerous and repeated violations of federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign wire or mail facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

112. As part of and in furtherance of the scheme to defraud, Defendants made numerous material omissions and misrepresentations to Plaintiff with the intent to defraud and deceive Plaintiff.

113. For example, on July 10, 2014 Assurant and/or SGIC, with the approval of Nationstar, sent Plaintiff a form letter on Nationstar letterhead, stating that Nationstar had purchased force-placed insurance policy to protect its interest in Plaintiff's property, the annual premium for that year's coverage was $2,570, and the premium had been advanced on Plaintiff Alpert's behalf "as provided in your loan documents." In making these statements, Nationstar and the Assurant Defendants knowingly and intentionally fostered the mistaken impression that the premium Plaintiff Alpert was to be charged for the insurance policy was for the cost of the policy, when in fact the premium also included a kickback to Nationstar and/or Harwood Services. Defendants had a duty to correct this mistaken impression. The omission was material, as it gave Defendants a colorable reason to charge Plaintiff unreasonably high charges for the force-placed insurance and would have influenced Plaintiff's decisions whether to pay the charges or contest them.

114. In stating that its actions were "as provided in your insurance contract," the September 2012 letter to Plaintiff also misrepresented that the loan documents gave Nationstar the right to charge Plaintiff for the cost of insurance tracking and for kickbacks to the Nationstar Defendants. Nationstar and the Assurant Defendants knew that the loan documents did not give Nationstar that authority. This misrepresentation was material, as it gave Nationstar and the Assurant Defendants a



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

colorable reason to charge Plaintiff unreasonably high premiums and would have influenced Plaintiff's decision whether to pay the premiums or contest them.

115. The September 2012 form letter mislead Plaintiff in several other respects. First, the notice misrepresents that insurance "*will be obtained*" with the assistance of Harwood Service. A master policy was already in place, therefore there was nothing for Harwood Service to "obtain" moving forward. Second, Harwood Service would do no work to "assist" with the procurement of force-placed insurance, nor was this ever Defendants' intention. Third, the payment made to Harwood Service in connection with Defendants' force-placed insurance program was not a true "commission" because it did not compensate Harwood Service for any work performed. The letter, that is, omitted to disclose that the payment was in fact a kickback to Harwood Service.

116. The Assurant Defendants, with the approval of Nationstar and on Nationstar letterhead also sent Plaintiff force-placed insurance form letters stating that Nationstar would purchase the required coverage and charge the borrower the premium or the cost of the insurance "coverage." In making these statements, Defendants knowingly and intentionally fostered the mistaken impression that the force-placed insurance premiums that Plaintiff was charged represented the cost of the policies when in fact such premiums cost more because they were inflated to include kickbacks, reinsurance profits, discounts, or subsidized costs returned to Nationstar or its affiliates, including Harwood Service.

117. For the purpose of executing the scheme to defraud, Defendants sent, mailed and transmitted, or caused to be sent, mailed or transmitted, in interstate or foreign



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

commerce numerous materials, including but not limited to the notices and letters described above informing Plaintiff that they could charge Plaintiff unreasonably high force-placed insurance premiums. Defendants also transferred sums among themselves, including but not limited to kickbacks, in furtherance of their scheme to defraud Plaintiff, in violation of the wire fraud statutes.

118. By reason and as a result of Defendants' conduct and participation in the racketeering activity alleged herein, Defendants have caused damages to Plaintiff in the form of unreasonably high force-placed insurance premiums.

**COUNT X**

**Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d)**

119. Plaintiff Alpert re-alleges and incorporates paragraphs above of this complaint as if fully set forth herein. Plaintiff further alleges as follows.

120. At all relevant times, Defendants were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(d). Defendants agreed to conduct and participate, directly and indirectly, in the conduct and affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

121. Defendants agreed among themselves that the Assurant Defendants would be Nationstar's exclusive force- placed insurance providers and Nationstar would extract the unreasonably high premiums from Nationstar's customers. Defendants also agreed that the Assurant Defendants would pay kickbacks to Nationstar or its affiliates, including Harwood Service.

122. Nationstar's affiliates – like, Harwood Service – pass much of these profits from this scheme to Nationstar.



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

123. ASIC and SGIC pass much of their profits from this scheme to Assurant.

124. Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth above

125. As a result of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiff suffered damages in the form of unreasonably high charges for force-placed insurance premiums.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, demands judgment against Defendants as follows:

A. Enjoining Defendants from continuing the acts and practices described above;
B. For actual damages;
C. For treble damages;
D. For statutory damages;
E. For attorney fees

Respectfully submitted this June 23, 2015.

By: /s/ Jason Anderson
Jason Anderson WSBA #32232
Attorney for Plaintiff,
Spencer Alpert



Jason Anderson
8015 15th Ave NW Ste 5
Seattle, WA 98117
206-706-2882
jason@jasonandersonlaw.com

NATIONSTAR MORTGAGE LLC
INSURANCE CENTER
P.O. BOX 7729
SPRINGFIELD, OH 45501-7729

SPENCER ALPERT
2442 NW MARKET ST
SEATTLE, WA 98107

Re: 0600340525-011D



# AMERICAN SECURITY INSURANCE COMPANY

PO BOX 50355, ATLANTA, GA 30302
A Stock Insurance Company

September 20, 2012

| COMPANY USE | |
|---|---|
| Major | PMS |
| 5957 | 0QY2001 |

**INSURANCE BINDER**

BINDER NUMBER:
007290000 0600340525-011D

**ADDITIONAL INSURED (MORTGAGOR)- Name and Address**
SPENCER ALPERT
2442 NW MARKET ST
SEATTLE, WA 98107

**NAMED INSURED (MORTGAGEE)-Name and Address**
NATIONSTAR MORTGAGE LLC
ITS SUCCESSORS AND/OR ASSIGNS
P.O. BOX 7729
SPRINGFIELD, OH 45501-7729

LOAN NUMBER: 0600340525-011D

| BINDER PERIOD: 60 DAYS | | | | Described Location |
|---|---|---|---|---|
| EFFECTIVE TIME: 12:01 a.m. | | | | 10218 RICHWOOD DR NW<br>SEATTLE, WA 98177 |
| | Mo | Day | Yr. | Coverage Amount | |
| INCEPTION: | 07/03/2012 | | | $530,000 | |
| | | | | Annual Premium * | |
| EXPIRATION: | 09/01/2012 | | | $5,088.00 | |

* This amount may include state required assessments, surcharges, taxes and fees.

At the request of your mortgage servicer, AMERICAN SECURITY INSURANCE COMPANY has issued temporary coverage in the form of an insurance binder for the period shown above. This binder covers the described property for risks of direct loss subject to the terms, conditions and limitations of the policy in current use by us.

This policy only covers buildings and structures. It does not cover your contents or personal property, nor does it provide you with liability coverage.

CLAIMS INFORMATION ONLY
1-800-326-7781

ALL OTHER INQUIRIES
1-866-825-9267