HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SPENCER ALPERT,

              Plaintiff,

    v.

NATIONSTAR MORTGAGE LLC, a
Delaware limited liability company;
HARWOOD SERVICE COMPANY,
a Delaware corporation; AMERICAN
SECURITY INSURANCE
COMPANY, a Delaware corporation;
STANDARD GUARANTY
INSURANCE COMPANY, a
Delaware corporation; and,
ASSURANT, INC., a Delaware
corporation,

              Defendant.

CASE NO. C15-1164 RAJ

ORDER

This matter comes before the Court on Defendants' motions to dismiss.  Dkt. ##
46, 47, 48.[1]  Plaintiff opposes the motions.  Dkt. ## 49, 50, 51.  For the reasons that
follow, the Court **GRANTS in part** and **DENIES in part** the motions.

ORDER- 1

1
## I.    BACKGROUND

2        This case is about force-placed insurance.  In 2006, Plaintiff obtained a mortgage

3   loan.  Dkt. # 43 (Amended Complaint) at ¶ 39.  Aurora Bank ("Aurora") was an early

4   servicer of the loan until 2012, at which time Nationstar Mortgage LLC ("Nationstar")

5   took over as the loan servicer.  *Id*. at ¶ 42.  Plaintiff's mortgage agreement included a

6   Property Insurance provision that required Plaintiff to maintain a certain level of

7   insurance.  *Id*. at 40.  If Plaintiff's coverage lapsed, then the agreement authorized

8   Nationstar to obtain the proper amount of coverage.  *Id.*  The agreement provided, in part,

9   that:

10              If Borrower fails to maintain any of the coverages described

11              above, Lender may obtain insurance coverage, at Lender's

12              option and Borrower's expense.  Lender is under no obligation

13              to  purchase  any  particular  type  or  amount  of  coverage.

14              Therefore, such coverage shall cover Lender, but might or not

15              protect Borrower, Borrower's equity in the Property, or the

16              contents of the Property, against any risk, hazard or liability,

17              and  might  provide  greater  or  lesser  coverage  than  was

18              previously in effect.  Borrower acknowledges that the cost of

19              insurance coverage so obtained might significantly exceed the

20              cost of insurance that Borrower could have obtained.

21

22
_____

23
[1] The Court strongly disfavors footnoted legal citations.  Footnoted citations serve as an end-run around

24   page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR
7(e).  Moreover, several courts have observed that "citations are highly relevant in a legal brief" and

25   including them in footnotes "makes brief-reading difficult."  *Wichansky v. Zowine*, No. CV-13-01208-
PHX-DGC, 2014 WL 289924, at \*1 (D. Ariz. Jan. 24, 2014).  The Court strongly discourages the Parties

26   from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*,
22 F.3d 899-900 (9th Cir. 1994).

27

ORDER- 2

1   *Id.* The agreement further provided that, "[i]f (a) Borrower fails to perform the covenants

2   and agreements contained in this Security instrument . . . then Lender may do and pay for

3   whatever is reasonable and appropriate to protect the Lender's interest in the Property

4   . . ., including protecting and/or assessing the value of the Property . . . ." *Id.* at ¶ 41; *see*

5   *also* Dkt. # 28 at p. 16.

6           Plaintiff claims that he had his own insurance policy through Safeco Insurance

7   Company ("Safeco") through July 2013, which Aurora can verify.  Dkt. # 43 (Amended

8   Complaint) at ¶ 42.  Nonetheless, Nationstar force-placed insurance on his property

9   beginning in July 2012.  Plaintiff contests the force-placed policy from July 2012 to July

10  2013, but concedes that "[a]t some time," his voluntary insurance policy indeed lapsed.

11  *Id.* at ¶ 42.

12          Plaintiff avers that Nationstar and the insurance companies operate a kickback

13  scheme that results in inflated premiums for borrowers who have force-placed insurance

14  on their property.  In his Amended Complaint, Plaintiff explains that Assurant Inc.

15  ("Assurant") operates through its subsidiaries, American Security Insurance Company

16  (ASIC) and Standard Guaranty Insurance Company (SGIC), to monitor loans.  Dkt. # 43

17  (Amended Complaint) at ¶ 9.  When a borrower's coverage lapses, SGIC and ASIC work

18  with Nationstar's broker, Harwood Service Company ("Harwood"), to place the proper

19  insurance policy.  Once the policy is placed, Nationstar pays the associated premiums to

20  the insurers and charges that premium to the borrower.  *Id*. at ¶ 26.  Plaintiff alleges that

21  SGIC and ASIC would then pay commissions to Harwood and/or Nationstar, but these

22  commissions were actually kickbacks used to secure an exclusive relationship.  *Id*. at ¶ 9.

23  Moreover, Plaintiff asserts that Nationstar maintains an "umbrella policy" with the

24  insurers such that Harwood's services are unnecessary.  *Id*. at ¶ 24.

25          Plaintiff claims that the premiums include an extra amount designated for the

26  kickbacks, as well as extra amounts for potential costs and charges associated with

27  servicing.  *Id.* at ¶ 30.  This amount is paid back to Nationstar but not to the borrowers.

ORDER- 3

1    Therefore, Plaintiff alleges that he paid "hyper-inflated premiums" for his force-placed

2    insurance policy.  *Id*. at ¶ 30.

3          Along with the issue of inflated premiums, Plaintiff also alleges that the

4    Defendants overvalued his property such that it would qualify for higher premiums.  *Id*.

5    at ¶¶ 133, 134.  Plaintiff claims this pattern of overvaluation is a widespread and common

6    practice for Defendants.  *Id.* at ¶ 147.

7          On June 10, 2015, Plaintiff "obtained a quote for standard insurance on his home

8    from Commerce West Insurance Company," and found that this premium was less than

9    his current force-placed insurance premium.  *Id.* at ¶ 48.  He also noticed that the quote

10   from Commerce West Insurance Company was "similar to what he was previously

11   paying to Safeco."  *Id*.  He subsequently served Defendants with a complaint on July 2,

12   2015, and Defendants removed to this Court.  Dkt. # 1.  Plaintiff then amended his

13   complaint, and Defendants responded with the instant motions to dismiss.

14   **II.      LEGAL STANDARD**

15        A.  12(b)(1)

16        Federal courts are tribunals of limited jurisdiction and may only hear cases

17   authorized by the Constitution or a statutory grant.  *Kokkonen v. Guardian Life Ins. Co.*

18   *of Am.*, 511 U.S. 375, 377 (1994).  The burden of establishing subject-matter jurisdiction

19   rests upon the party seeking to invoke federal jurisdiction.  *Id*.  Once it is determined that

20   a federal court lacks subject-matter jurisdiction, the court has no choice but to dismiss the

21   suit.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the

22   court determines at any time that it lacks subject-matter jurisdiction, the court must

23   dismiss the action.").

24        A party may bring a factual challenge to subject-matter jurisdiction, and in such

25   cases the court may consider materials beyond the complaint.  *PW Arms, Inc. v. United*

26   *States*, 186 F. Supp. 3d 1137, 1142 (W.D. Wash. 2016) (citing *Savage v. Glendale Union*

27   *High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003); *see also McCarthy v. United States*,

ORDER- 4

1   850 F.2d 558, 560 (9th Cir. 1988) ("Moreover, when considering a motion to dismiss

2   pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings,

3   but may review any evidence, such as affidavits and testimony, to resolve factual disputes

4   concerning the existence of jurisdiction.").

5           B.  12(b)(6)

6           Rule 12(b)(6) permits a court to dismiss a complaint for failure to state a claim.

7   Fed. R. Civ. P. 12(b)(6). The rule requires the court to assume the truth of the complaint's

8   factual allegations and credit all reasonable inferences arising from those allegations.

9   *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  A court "need not accept as true

10  conclusory allegations that are contradicted by documents referred to in the complaint."

11  *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008).  The

12  plaintiff must point to factual allegations that "state a claim to relief that is plausible on

13  its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  If the plaintiff succeeds,

14  the complaint avoids dismissal if there is "any set of facts consistent with the allegations

15  in the complaint" that would entitle the plaintiff to relief.  *Id*. at 563; *Ashcroft v. Iqbal*,

16  556 U.S. 662, 679 (2009).

17          A court typically cannot consider evidence beyond the four corners of the

18  complaint, although it may rely on a document to which the complaint refers if the

19  document is central to the party's claims and its authenticity is not in question.  *Marder v.*

20  *Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may also consider evidence subject to

21  judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

22          **III.    DISCUSSION**

23          A.  The Filed Rate Doctrine

24          Defendants argue that Plaintiff's lawsuit boils down to a complaint based on the

25  amount of his premiums, and therefore the filed rate doctrine bars the lawsuit.  Dkt. ##

26  46-48.  The filed rate doctrine is a judicially created doctrine that bars plaintiffs from

27  suing based on allegedly unreasonable rates if those rates were set by the governing

1   regulating agency.  *See McCarthy Fin., Inc. v. Premera*, 347 P.3d 872, 875 (Wash. 2015);

2   *see also Wegoland, Ltd. v. NYNEX Corp.*, 806 F. Supp. 1112, 1115 (S.D.N.Y. 1992),

3   *aff'd*, 27 F.3d 17 (2d Cir. 1994) (finding that the filed rate doctrine applies equally "where

4   state law creates a state agency and statutory scheme pursuant to which the state agencies

5   determine reasonable rates.").  In early applications, the Supreme Court cited the doctrine

6   to find that a plaintiff was barred from suing under the Sherman Act based on rates that

7   were approved by the Interstate Commerce Commission.  *Keogh v. Chicago & N.W. Ry.*

8   *Co.*, 260 U.S. 156 (1922).  In *Keogh*, the plaintiff, a private shipper, complained that the

9   defendant carrier conspired to fix rates and, even though the rates were approved by the

10  Commission, the plaintiff may have benefited from lower rates had the carriers not

11  colluded with each other.  *Id.* at 161-162.  The Supreme Court concluded that, though the

12  government may have redress by criminal proceedings, the private shipper could not

13  "recover damages . . . because he lost the benefit of rates still lower, which, but for the

14  conspiracy, he would have enjoyed."  *Id.* at 162.  The Supreme Court went on to find

15  that, "[a] rate is not necessarily illegal because it is the result of a conspiracy in restraint

16  of trade in violation of the Anti-Trust Act."  *Id.*  Because the rates were legal, the private

17  shipper had no injury under the Sherman Act.  *Id.* at 163.

18       The filed rate doctrine "provides, in essence, that any 'filed rate'—a rate filed with

19  and approved by the governing regulatory agency—is per se reasonable and cannot be the

20  subject of legal action against the private entity that filed it."  *McCarthy*, 347 P.3d at 875

21  (quoting *Tenore v. AT&T Wireless Servs.*, 962 P.2d 104 (Wash. 1998)).  Underlying the

22  doctrine are two key principles: "(1) to preserve the agency's primary jurisdiction to

23  determine the reasonableness of rates, and (2) to insure that regulated entities charge only

24  those rates approved by the agency."  *Id.*  Federal courts recognize a further principle

25  underlying the doctrine: "that litigation should not become a means for certain ratepayers

26  to obtain preferential rates (the principle of 'nondiscrimination')."  *Rothstein v. Balboa*

27

ORDER- 6

1  *Ins. Co.*, 794 F.3d 256, 261 (2d Cir. 2015).  The doctrine "has often been invoked rigidly,

2  even to bar claims arising from fraud or misrepresentation."  *Tenore*, 962 P.2d at 108.

3          There is a split in authority with regard to whether federal courts apply the filed

4  rate doctrine to bar kickback claims.  *Compare Rothstein*, 794 F.3d 256 (finding that the

5  nonjusticiability and nondiscrimination principles underlying the filed rate doctrine bar

6  plaintiff's claims related to alleged kickbacks), *and Fowler v. Caliber Home Loans, Inc*.,

7  No. 15-24542-CIV, 2016 WL 4761838 (S.D. Fla. Sept. 13, 2016) (collecting authority to

8  find that the Eleventh Circuit would most likely conclude that the filed rate doctrine bars

9  similar claims), *with Cannon v. Wells Fargo Bank N.A*., 917 F. Supp. 2d 1025, 1038

10  (N.D. Cal. 2013) [2] (acknowledging district court and circuit court authority applying the

11  filed rate doctrine to bar kickback claims but nevertheless permitting plaintiffs to

12  maintain the lawsuit on the basis that they were challenging kickbacks, not the cost of

13  insurance),[3] *and Alston v. Countrywide Financial Corp.*, 585 F.3d 753 (3d Cir. 2009)

14  (finding that the filed rate doctrine did not bar plaintiff's RESPA claims).  However, the

15  weight of authority holds that the preclusive applicability of the filed rate doctrine "does

16  not depend on the nature of the cause of action the plaintiff seeks to bring or the

17  culpability of the defendant's conduct or the possibility of inequitable results."  *Rothstein*,

18  794 F.3d at 261–62 (internal quotations omitted).  The doctrine will bar kickback claims

19

20  [2] The "California district courts have generally held that the filed rate doctrine is not a per se bar" to
kickback claims.  *Haddock v. Countrywide Bank, NA*, No. CV146452PSGFFMX, 2015 WL 9257316, at

21  *18 (C.D. Cal. Oct. 27, 2015) (collecting cases where the doctrine was not a bar to plaintiff's kickback
claims).  However, "it is unclear whether the filed rate doctrine applies under California law."  *Id.*;

22  *Knevelbaard Dairies v. Kraft Foods, Inc*., 232 F.3d 979, 993 (9th Cir. 2000) ("[T]here is no reason to
think that California would apply the filed rate doctrine that it has so clearly rejected.").

23

24  [3] In *Cannon*, the court cited *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM,
2012 WL 2003337 (S.D. Fla. June 4, 2012) to find that plaintiffs were not challenging the rates

25  filed by the insurers.  917 F. Supp. 2d at 1038.  Indeed, the court in *Kunzelmann* denied a Motion
to Dismiss on the basis that plaintiff was not challenging the actual insurance rates.  *Kunzelmann*

26  *v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM, 2013 WL 139913, at * 11 (S.D. Fla. Jan.
10, 2013).  But, in a subsequent order, that court concluded that the filed rate was an issue and

27  denied class certification.  *Id.* at *12.

1  as long as they upset the principles set forth in *Keogh*.  *See Carlin v. DairyAmerica, Inc.*,

2  705 F.3d 856, 869 (9th Cir. 2013) ("[T]he courts have held that the doctrine is to be

3  applied strictly to prevent a plaintiff from bringing a cause of action whenever [the]

4  purpose[s] underlying the filed rate doctrine [are] implicated.") (quoting *Ice Cream*

5  *Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F.Supp.2d 262, 275 (D. Conn. 2003)).

6        Washington recognizes the filed rate doctrine and courts often apply it to the

7  insurance industry.  *McCarthy*, 347 P.3d at 873; *Heaphy v. State Farm Mut. Auto Ins.*

8  *Co.*, No. C05-5404RBL, 2006 WL 278556, at *2 (W.D. Wash. Feb. 2, 2006).   However,

9  Washington's filed rate doctrine is limited with regard to Consumer Protection Act

10  (CPA) claims; courts must consider such claims "even when the requested damages are

11  related to agency-approved rates . . . ."  *McCarthy*, 347 P.3d at 875.  The doctrine will

12  take precedence, however, if CPA claims "run squarely against the filed rate doctrine."

13  *Id*. at 875-76.

14        In this case, Plaintiff claims that he is not attacking the insurance premiums but

15  rather the Defendants' conduct—specifically, the alleged kickback scheme—in inflating

16  those premiums.  Dkt. # 49 at pp. 4-13.  However, Plaintiff's Amended Complaint is

17  replete with references to the facially unreasonable amounts that Nationstar charged

18  Plaintiff.  Dkt. # 43 (Amended Complaint) at ¶¶ 52, 54, 60, 64, 67, 69, 73, 83, 84, 101,

19  104, 110, 114, 118, 123, 130.  These allegations directly implicate the nonjusticiability

20  and nondiscrimination purposes underlying the filed rate doctrine.  That is, the

21  nonjusticiability issue is triggered by Plaintiff's request that the Court calculate his

22  damages as "(1) the difference between what he was charged and the reasonable cost of

23  insurance . . . and (2) the difference between what he was charged and the portion of their

24  charges that were not for active insurance on his home."  *Id*. at ¶ 54.  Such actions place

25  the Court directly on the toes of the Insurance Commissioner, a situation that courts

26  specifically contemplated when constructing the doctrine.  *See McCarthy*, 347 P.3d 872

27  at 875 (applying the filed rate doctrine "because the court would need to determine what

1  health insurance premiums would have been reasonable for the Policyholders to pay as a

2  baseline for calculating the amount of damages and the OIC has already determined that

3  health insurance premiums paid by the Policyholders were reasonable.").

4        Plaintiff's allegations also trigger the nondiscrimination principle underlying the

5  filed rate doctrine.  Were the Court to engage in a recalculation of his premiums, Plaintiff

6  would essentially benefit from a rebate that was not uniformly or equally provided to

7  other similarly situated borrowers.  *See Keogh*, 260 U.S. at 163 (finding that awarding

8  damages "might, like a rebate, operate to give [plaintiff] a preference over his trade

9  competitors"); *Rothstein*, 794 F.3d 256 at 263 ("While non-suing borrowers serviced by

10  GMAC would be billed at the filed LPI rates, Plaintiffs would enjoy the discount that

11  Newport allegedly provided to GMAC.").  Accordingly, the filed rate doctrine precludes

12  Plaintiff from bringing any claims based on allegedly inflated premiums, even if

13  Defendants engaged in a kickback scheme to arrive at those premiums.[4]  The Court

14  therefore **DISMISSES** Counts 1-5 and 7-10 based on this doctrine.

15        B.  Truth in Lending Act (TILA) Claim

16        Plaintiff alleges a TILA claim against Nationstar.  Dkt. # 43 at ¶¶ 88-99.  TILA

17  claims are subject to a one year statute of limitations.  *Westcott v. Wells Fargo Bank, N.A*,

18  862 F. Supp. 2d 1111, 1115 (W.D. Wash. 2012) (citing 15 U.S.C. § 1640(e)).  Plaintiff

19

20

21  [4] In its Order, the Court finds that the filed rate doctrine bars Plaintiff's premium-based claims,
    even if those claims are based on an alleged kickback scheme.  However, the Court does not find

22  that Plaintiff carried his burden to plausibly allege such a scheme.  *See Twombly*, 550 U.S. at
    570.  "The defining characteristic of a kickback is divided loyalties*." Cohen v. Am. Sec. Ins.*

23  *Co*., 735 F.3d 601, 611 (7th Cir. 2013); Feaz v. Wells Fargo Bank, N.A., 745 F.3d 1098, 1111
    (11th Cir. 2014) (finding that "simply calling a commission a kickback doesn't make it one.").

24  Plaintiff does not plead facts that plausibly allege divided loyalties on behalf of Defendants.
    Indeed, Plaintiff was on notice that he would incur higher premiums with potentially less

25  coverage under a force-placed insurance policy.  Dkt. # 43 (Amended Complaint) at ¶¶ 40-41.
    However, any attempt by Plaintiff to further amend his Complaint to plausibly allege a kickback

26  scheme would be futile because the filed rate doctrine bars the Court from adjusting Plaintiff's

27  premiums.

1 asserts that his claim is "saved" due to equitable tolling, Dkt. # 50 at p. 13, but the Court

2 is not convinced.

3        In his Amended Complaint, Plaintiff suggests that he discovered the

4 unreasonableness of the premiums after comparing Nationstar's premiums to a quote

5 from Commerce West Insurance Company in June 2015.  Dkt. # 43 (Amended

6 Complaint) at ¶ 48.  However, Plaintiff confirms that the quote from Commerce West

7 Insurance Company was "similar to what he was previously paying at Safeco" in 2012.

8 *Id*.  Plaintiff offers no reason for why he could not have discovered the basis of his TILA

9 claim in 2012 when his premiums initially increased.  *See Westcott*, 862 F. Supp. 2d at

10 1116; *see also Lapinski v. Bank of Am., N.A.*, No. C13-00925 RSM, 2014 WL 347274, at

11 *3 (W.D. Wash. Jan. 30, 2014) ("Equitable tolling is not warranted where a litigant has

12 failed to exercise due diligence in preserving his legal rights.") (internal quotations

13 omitted).  On July 2, 2015, Plaintiff served Defendants with the unfiled Summons and

14 Complaint.  *See* Dkt. # 1.  Because Plaintiff is bound by TILA's one year statute of

15 limitations, he is therefore barred from suing on any TILA violations prior to July 2,

16 2014.

17        Nationstar was not required to disclose the force-placed insurance if the purchase

18 of such insurance was authorized by the mortgage agreement.  *Cannon v. Wells Fargo*

19 *Bank, N.A.*, 917 F. Supp. 2d 1025 at 1045.  Moreover, force-placed insurance does not

20 trigger TILA disclosure if the creditor purchased the insurance "based on a failure by the

21 borrower to maintain the insurance . . . ."  *Id*. at 1046.  Here, Nationstar was authorized to

22 purchase insurance for Plaintiff if he failed to maintain coverage.  Dkt. # 43 (Amended

23 Complaint) at ¶ 40 (excerpt from mortgage agreement authorizing Lender to place

24 insurance if borrower fails to maintain coverage).  At some point, Plaintiff's coverage

25 lapsed and Nationstar placed insurance.  To be sure, Plaintiff disputes Nationstar's

26 authority to place insurance from July 2012 to July 2013; however, the statute of

27

1   limitations, as discussed above, forecloses Plaintiff from bringing a TILA claim based on

2   actions during this period.  Therefore, the Court **DISMISSES** Plaintiff's TILA claim.

3           C.  Remaining Breach of Contract Claims

4           To allege a claim for breach of contract, Plaintiff "must show an agreement

5   between the parties, a parties' duty under the agreement, and a breach of that duty." *Fid.*

6   *& Deposit Co. of Maryland v. Dally*, 201 P.3d 1040, 1044 (Wash. Ct. App. 2009).

7   Plaintiff claims that Nationstar breached the Deed of Trust in two ways: (1) by

8   "artificially select[ing] an inflated value for the building for purposes of placing

9   insurance on the property," thereby allowing for higher premiums, Dkt. # 43 (Amended

10  Complaint) at ¶¶ 133, 134, and (2) by placing insurance despite Plaintiff's purported

11  proof of insurance through his prior servicer, *id.* at ¶¶ 150-152.

12          In his Amended Complaint, Plaintiff cites to the "Property Insurance" provision of

13  his mortgage agreement.  Dkt. # 43 (Amended Complaint) at ¶¶ 40-41.  Under this

14  provision, Nationstar is authorized to obtain insurance coverage on behalf of Plaintiff if

15  Plaintiff fails to maintain the proper level of coverage.  *Id.* at ¶ 40.  Nationstar "is under

16  no obligation to purchase any particular type or amount of coverage." *Id*.  The agreement

17  also provides for Nationstar to take reasonable and appropriate actions to secure its

18  interest in the property, including "protecting and/or assessing the value of the Property."

19  Dkt. # 28 at p. 16.  Accordingly, it appears that Nationstar's discretion with regard to

20  insuring the property was limited to "reasonable or appropriate" actions, including a

21  presumably correct valuation of the property.  Plaintiff alleges that Nationstar breached

22  this contract by deliberately overvaluing the property for its own financial gain.  Dkt. #

23  43 (Amended Complaint) at ¶¶ 133-134.  Taking these allegations as true, the Court finds

24  that Plaintiff has sufficiently alleged a breach of contract based on Defendants'

25  overvaluation of his property.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)

26  ("When ruling on a motion to dismiss, we accept all factual allegations in the complaint

27  as true and construe the pleadings in the light most favorable to the nonmoving party.").

1    Plaintiff further alleges that he maintained his own insurance through July 2013.

2  *Id*. at ¶¶ 42-43.  Nationstar was certainly not authorized to obtain insurance if Plaintiff

3  had elected to purchase his own policy.  Therefore, based on the standard applied at this

4  stage, the Court **DENIES** the motion to dismiss as to both breach of contract claims;

5  Plaintiff may continue forward on Counts 11 and 13.

6    D.  Remaining Consumer Protection Act Claim

7    A Consumer Protection Act (CPA) claim requires proof of five elements: "(1)

8  unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

9  impact; (4) injury to plaintiff in his or her business or property; (5) causation."  *Hangman*

10  *Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

11  Plaintiff's remaining CPA claim turns on whether Defendants' alleged overvaluing of the

12  property constitutes an unfair or deceptive act or practice.  Though the act or practice

13  arises in the context of a breach of this agreement, it appears that the agreement is most

14  likely a type of form contract that is disbursed to a large number of borrowers.

15  Therefore, there is a large public interest in this subject matter and a concern that

16  Defendants will continue to overvalue properties so that they may qualify for higher

17  levels of premiums.  *See Mason v. Mortgage America, Inc.*, 792 P.2d 142, 148 (Wash.

18  1990); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 538

19  (Wash. 1986).  The Court finds that, at this early pleading stage, Plaintiff has alleged

20  sufficient facts to suggest that Defendants acted unfairly or deceptively to wrongly value

21  properties in order to benefit financially.  *Skansgaard v. Bank of Am., N.A.*, 896 F. Supp.

22  2d 944, 949 (W.D. Wash. 2011) (finding that an unfair or deceptive act or practice "need

23  only have 'the capacity to deceive a substantial portion of the public.'") (quoting *Indoor*

24  *Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10 (Wash.

25  2007)).  Therefore, the Court **DENIES** the motion to dismiss as to Count 12.

26

27

1        E.   <u>Whether Assurant is a Proper Party to this Lawsuit</u>

2        Assurant moves for its dismissal from this action because: (1) Plaintiff lacks

3   standing to sue Assurant, and (2) the Court lacks personal jurisdiction over Assurant.

4   Dkt. # 47.  In response, Plaintiff asks the Court to review a brief filed at Docket No. 26.

5   This brief does not address any of Assurant's arguments.  Dkt. # 26.  Plaintiff's response

6   filed at Docket No. 29 appears to be more on point.  However, this response also fails to

7   substantively address Assurant's arguments.  Plaintiff merely directs the Court to a New

8   York consent order while making conclusory arguments for why Assurant is a proper

9   party.  Plaintiff offers no authority, nor any other persuasive evidence, to rebut Assurant's

10   arguments that this Court lacks jurisdiction.  *See Lee v. City of Los Angeles*, 250 F.3d

11   668, 692 (9th Cir. 2001) ("On a motion to dismiss for lack of personal jurisdiction, the

12   plaintiff has the 'burden to establish jurisdiction.'") (internal citations omitted).  The

13   Court will not do Plaintiff's work for him.  Accordingly, the Court **GRANTS** Assurant's

14   motion.

15       **IV.   CONCLUSION**

16        Based on the all the foregoing, the Court **GRANTS** Assurant's motion (Dkt. # 47)

17   and **GRANTS in and part** and **DENIES in part** the remaining Defendants' motions

18   (Dkt. ## 46, 48).  The matter will move forward against the remaining Defendants on

19   Plaintiff's claims in Counts 11, 12, and 13 of his Amended Complaint.

20        Dated this 21st day of March, 2017.

21

22

23   _____

24   The Honorable Richard A. Jones
    United States District Judge

25

26

27

ORDER- 13