UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SPENCER ALPERT,<br><br>              Plaintiff,<br><br>    v.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company; HARWOOD SERVICE COMPANY, a Delaware corporation; AMERICAN SECURITY INSURANCE COMPANY, a Delaware corporation; STANDARD GUARANTY INSURANCE COMPANY, a Delaware corporation; and, ASSURANT, INC., a Delaware corporation,<br><br>              Defendant. | CASE NO. C15-1164 RAJ<br><br>ORDER |

This matter comes before the Court on Defendants Nationstar Mortgage LLC ("Nationstar") and Harwood Service Company's ("Harwood") (collectively, "Defendants") Motion for Summary Judgment, and Plaintiff Spencer Alpert's

("Plaintiff") Motion for Summary Judgment. Dkt. ## 96, 101.[1] The parties have filed responses and replies for each motion. Dkt. ## 111, 115, 116, 117. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion, and **DENIES** Plaintiff's Motion.

## I. BACKGROUND

This case is about force-placed insurance. In 2006, Plaintiff obtained a mortgage loan. Dkt. # 98, Exs. A, B; Dkt. # 97, Ex. C at 32:11-25, 33:1-4. Aurora Bank ("Aurora") was an early servicer of the loan until 2012, at which time Nationstar took over as the loan servicer. Dkt. # 98, Exs. C, D. Plaintiff's mortgage agreement included a Property Insurance provision that required Plaintiff to maintain a certain level of insurance. Dkt. # 98, Ex. B. If Plaintiff's coverage lapsed, then the agreement authorized Nationstar to obtain the proper amount of coverage. *Id.* at ¶ 5. The Deed of Trust provided, in part, that:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability, and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.

---

[1] The Court notes that the parties' briefs, especially Plaintiff's, are replete with footnoted citations. The Court strongly disfavors footnoted legal citations. Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e). Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014). The Court strongly discourages the Parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

*Id.* The agreement further provided that, "[i]f (a) Borrower fails to perform the covenants and agreements contained in this Security instrument . . . then Lender may do and pay for whatever is reasonable and appropriate to protect the Lender's interest in the Property . . ., including protecting and/or assessing the value of the Property . . . ." *Id.*

At some point in 2010, Plaintiff stopped making his loan payments when he "became aware of what appeared to be irregularities" with his loan. Dkt. # 97, at ¶ 7, Ex. C, at 34:18-22, 62:24-25, 63:1-25. Nationstar officially took over servicing Plaintiff's loan on July 15, 2012. Dkt. # 98, at ¶¶ 8-9, Exs. C and D; Dkt. # 97, Exs. B-5, B-6. Plaintiff has not made any payments towards the loan since Nationstar took over servicing the Loan. Dkt. # 98 at ¶ 10. From 2008 to 2011, Plaintiff had an insurance policy through Safeco Insurance Company ("Safeco"), which had a coverage value for Plaintiff's dwelling set at $530,000. Dkt. # 97, Exs. B-1, B-2, B-3, C at 87:1-12, 89:16-25-90:1-25. At some point during 2011, Safeco advised Plaintiff that it would not renew his policy because an inspection of the Property revealed moss on the roof. Dkt. # 43, at ¶ 42; Dkt. # 97, Ex. C, at 35:12-19; Dkt. # 101 at 7. Plaintiff's Complaint contends that he "managed to reinstate his insurance policy commencing on July 2, 2012," which is around the time that the servicing rights to the Loan were transferred to Nationstar. Dkt. # 43, ¶ 42. However, the record indicates that Aurora never paid the August 2012 insurance premium to Safeco, and the insurance policy lapsed. Dkt. # 97, Ex. I.

Defendants utilize a vendor, American Security Insurance Company and Standard Guaranty Insurance Company ("ASIC/SGIC") to monitor hazard insurance compliance and lender-placed policies on mortgage loans serviced by Nationstar, including the subject loan. Dkt. # 98 at ¶ 11. Starting in 2012, Nationstar advised Plaintiff that his insurance policy had lapsed, and requested via letter verification that verification that the Property was insured and noted that if evidence of hazard insurance was not received within thirty (30) days, Nationstar "may be forced to obtain coverage to protect our interest in your property." *Id.* at Ex. E. Nationstar warned Plaintiff that "[t]he cost of

any coverage we obtain on your behalf will probably be greater than the cost for comparable coverage obtained through your own insurance agent. The cost of this policy/certificate will be paid by you." *Id.*

When Plaintiff did not respond, Nationstar sent follow-up letters notifying Plaintiff that it had purchased lender-placed insurance, again requested verification of Plaintiff's existing policy, and included documentation listing the coverage amount for Plaintiff's Property, including the dwelling and annual premium. Dkt # 98, Exs. G, J, M, P. When Plaintiff did not respond with verification of insurance, Nationstar sent additional letters notifying Plaintiff it was force-placing insurance on his property. *Id.* at Exs. I, L, O, R. These final letters reminded Plaintiff that the LPI would be cancelled upon Nationstar's receipt of evidence from Plaintiff of acceptable replacement insurance coverage and that the cost of the LPI was probably greater than the cost of "comparable coverage" that Plaintiff could obtain through his own insurance agent. *Id.*

Nationstar purchased and implemented the LPI policies as follows: (1) an ASIC Policy, with coverage from 07/03/2012 to 07/03/2013, valuing Plaintiff's dwelling at $530,000; (2) an ASIC Policy, with coverage from 07/03/2013 to 0703/2014, valuing Plaintiff's dwelling at $544,310; (3) an SGIC Policy, with coverage from 07/03/2014 - 07/03/2015, valuing Plaintiff's dwelling at $544,310; and (4) an SGIC Policy, with coverage from 07/03/2015 to 07/03/2016, valuing Plaintiff's dwelling at $560,095. Dkt # 98, Exs. E-R. In 2015, Plaintiff obtained his own insurance policy, valuing the dwelling at $348,900. Dkt. # 97, Ex. C at 31:6-9, 36:1-4, 88:1-2, 92:25-93:1-2. When Plaintiff informed Nationstar of this fact, in July 2015, Nationstar cancelled the then-existing LPI policy. Dkt. # 98, Ex. S.

Plaintiff filed his Complaint against ASIC, SGIC, Assurant, and Defendants on July 2, 2015, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, violation of the Washington Consumer Protection Act ("CPA"), violation of the Truth in Lending Act ("TILA"), tortious

interference, breach of fiduciary duty, and violations of the Racketeer Influenced and Corruption Act ("RICO"). Dkt. # 1-1. Defendants removed to this Court. Dkt. # 1.

On August 13, 2015, Defendants filed a motion to dismiss. Dkt. # 23. On that same day, ASIC, SGIC, and Assurant also moved to dismiss. *See* Dkt. ## 17–22. While these motions were pending, Plaintiff moved to amend his Complaint. Dkt. # 34. The Court granted Plaintiff's motion to amend and dismissed the motions to dismiss filed by Defendants, ASIC, SGIC, and Assurant. Dkt. # 42.

On March 3, 2016, Plaintiff filed his Amended Complaint, asserting thirteen claims. Dkt. # 43. On April 7, 2016, Defendants filed their motion to dismiss for failure to state a claim. Dkt. # 48. Defendants argued that Plaintiff's claims against Defendants were barred by the Filed-Rate Doctrine. Dkt. # 48. Assurant, ASIC, and SGIC also filed their respective motion to dismiss the amended complaint. Dkt. ## 46, 47. On March 22, 2017, this Court granted in part and denied in part the motions to dismiss filed by Defendants, ASIC, and SGIC. Dkt. # 58. The Court also granted in full Assurant's motion to dismiss. *Id.*

The Court dismissed all but three of Plaintiff's claims: those that remain are Count 11 (breach of contract), Count 12 (CPA), and Count 13 (breach of contract). *Id.* Count 11 alleges that Nationstar breached the Deed of Trust when it "artificially selected an inflated value" of the Property which, in turn, allowed Nationstar to "charge higher premiums than it could have charged if it had correctly valued the [Property]". Dkt. # 43, ¶¶ 131-39. Count 12 alleges that Defendants violated the CPA in "artificially" inflating the value of Plaintiff's Property and acted deceptively in that Nationstar was then able to charge "higher premiums based on this inflated value." *Id*. at ¶¶ 140-48. Count 13 alleges a breach of the Deed of Trust by Nationstar improperly placing insurance on the Property "commencing July 2, 2012 when the [P]roperty was still insured," and by classifying the Property as "vacant." *Id*. at ¶¶ 149-55.

Defendants then moved for summary judgment, which Plaintiff countered by cross-moving for summary judgment. Dkt. ## 96, 101. These motions are now before this Court.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

## III. DISCUSSION

A. <u>Breach of Contract Claims (Counts 11, 13)</u>

To allege a claim for breach of contract, Plaintiff "must show an agreement between the parties, a parties' duty under the agreement, and a breach of that duty." *Fid. & Deposit Co. of Maryland v. Dally*, 148 Wn. App. 739, 745, 201 P.3d 1040, 1044 (2009). Plaintiff has two remaining breach of contract claims: Counts 11 and 13. *Id.* Plaintiff claims that Nationstar breached the Deed of Trust in two ways: (1) by "artificially select[ing] an inflated value for the building for purposes of placing

insurance on the property," thereby allowing for higher premiums; and (2) by placing insurance despite Plaintiff's purported proof of insurance through his prior servicer. Dkt. # 43 at ¶¶ 133-34, 150-152.

At the outset, the Court notes that there no longer appears to be a dispute with respect to Plaintiff's breach of contract claim as alleged in Count 13. In Count 13, Plaintiff alleges that Defendants breached the Deed of Trust by placing insurance on the Property in 2012 while it was already insured. Dkt. # 43 at ¶¶ 149-55. While Plaintiff's discovery responses state that "upon information and belief" he had insurance on his Property from July 2012 to July 2013, this by itself is woefully insufficient to create a genuine issue of material fact on summary judgment, particularly when Plaintiff should have easily had access to this type of documentation. Dkt. # 97, Ex. B, at 5-6. Instead, the record shows that Plaintiff's insurance lapsed in 2012, and Plaintiff now admits he did not procure his own insurance policy until 2015. Dkt. # 97, Ex. C, 35:12-19; *see also* Dkt. # 101 at 7. The record establishes that for the time period that Defendants force-placed insurance on Plaintiff's Property, Plaintiff did not have his own active policy. *Id*. The Court thus finds that when Defendants force-placed insurance on Plaintiff's property, Plaintiff did not have an active insurance policy, and Defendants therefore did not breach the terms of the Deed of Trust on these grounds. Accordingly, the Court finds there was no overlap, and that there is no genuine issue of material fact left on Count 13.[2]

In Plaintiff's other breach of contract claim, Count 11 of his Amended Complaint, Plaintiff cites to the "Property Insurance" provision of his mortgage agreement. Dkt. # 43 at ¶¶ 40-41; *see also* Dkt. # 98, Ex. B at ¶ 5. Under this provision, Nationstar is authorized to obtain insurance coverage on behalf of Plaintiff if Plaintiff fails to maintain the proper level of coverage. *Id.* Nationstar "is under no obligation to purchase any

---

[2] As to Plaintiff's claim in the Amended Complaint that Nationstar breached the contract by misclassifying his Property as "vacant," the evidence in the record indicates that this classification did not result in any increased premiums. Dkt. # 97, Ex. D at 34:4-24.

particular type or amount of coverage." The agreement also provides for Nationstar to take reasonable and appropriate actions to secure its interest in the property, including "protecting and/or assessing the value of the Property." *Id.* at ¶ 9. Plaintiff alleges that Nationstar breached this contract by deliberately overvaluing the property for its own financial gain. Dkt. # 43 at ¶¶ 133-134.

As this Court already ruled, Nationstar's discretion regarding insuring the property was limited to "reasonable or appropriate" actions, including a presumably correct valuation of the property. Dkt. # 58 at 11-12. At this point, there seems to be little dispute that the initial $530,000 valuation in Defendants' LPI policy was based on the valuation of the improvements reflected in his home insurance policies with Safeco. Dkt. # 97, Exs. B-1, B-2, B-3; Dkt. # 98, Exs. G-I. Defendants argue that the $530,000 valuation was "consistent" with the coverage Plaintiff obtained for his Property from 2008 to 2011, and is therefore reasonable. Dkt. # 96 at 14. Defendants also argue that because the valuation was based on the coverage value for the dwelling from Plaintiff's own prior policies, Plaintiff cannot contest the reasonableness of the value estimation for the improvements on his Property. *Id*.

While this argument has surface-level appeal, Defendants do not sufficiently establish that a valuation "consistent" with Plaintiff's prior policies is necessarily a "reasonable" one under the terms of the Deed of Trust. Plaintiff admits that he over-insured his Property in his prior Safeco insurance policies because the premiums were low, but that this error would not necessarily dispel Nationstar's own apparent lack of due diligence in determining a reasonable value for the Property. Dkt. # 97, Ex. C at 87:1-12; Dkt. # 117 at 4. The Court agrees. Plaintiff also submits evidence countering Defendants' argument that this $530,000 valuation reflected a reasonable assessment of the value of the improvements on the property. For instance, from 2012 to 2015, the King County Assessor consistently valued the improvements on Plaintiff's Property below $350,000. *See* Dkt. # 105-5 (listing improvement values at $282,000 for 2012,

$333,000 for 2013, $217,000 in 2014, and $240,000 in 2015). Plaintiff also points to a broker price opinion from Nationstar's records, dated May 2015, listing a combined value for the Property (land and improvements included) of approximately $465,000. Dkt. # 114, Ex. 1. Finally, Plaintiff provides reports from realtor Steve Blackbourn and cost estimator Lester Green, who both provide estimates for the value of the improvements between $278,294 and $318,840 from 2012-2015. Dkt. ## 103, 109.

Defendants do little to address these reports. Defendants argue that Plaintiff's value estimations are inconsistent, as Plaintiff provides several different valuations for the Property between 2012 and 2015 (though the Court notes that they are all well below $530,000). Dkt. # 166 at 6. Defendants also point to a number of "suspect" discrepancies in the cited valuations, such as an "unexplained" $116,000 in valuation between 2013 and 2014, and note that vast gap between the valuation for the improvements and the valuation of the land. Dkt. # 116 at 7. These arguments suffice to create a genuine issue of the material fact as to what the appropriate valuation of the improvements *should* have been from 2012 to 2015, had Defendants exercised the appropriate amount of due diligence in ascertaining that value. They do not, however, support the entry of summary judgment solely in favor of Defendants. The fact remains that Defendants do not provide the Court with a reliable basis for what the value of the improvements *should* have been from 2012 to 2015. And while the fact that Nationstar accepted Plaintiff's new policy in 2015 doesn't necessarily mean they agreed with Plaintiff's $348,900 valuation of the improvements (or that such a valuation was accurate), it also betrays their position that Plaintiff's proffered valuations of the improvements on his self-procured insurance policies are *per se* accurate and reasonable.

Had Defendants provided sufficient evidence that the $530,000 valuation was the product of diligent investigation and research, the Court would be more inclined to accept Defendants' arguments. Unfortunately, the record, as it currently stands, does not permit any such inference. Defendants attempt to prove a negative, arguing that there was no

indication that basing the valuation for the July 2012 to 2013 time period on the valuation of the prior insurer was "not a reasonable practice." Dkt. # 116 at 11. Even if this were true, there is little compelling evidence in the record that this practice *was* reasonable.[3] Plaintiff's expert, Gregory Arnold, testified that Nationstar's reliance on only Plaintiff's prior insurance policies to determine the value of Plaintiff's property was deficient and "not underwriting," as Nationstar would have no way of knowing whether the previous insurer had the right figure, or whether this figure was based on the previous insurer's physical inspection of the Property. Dkt. # 114, Ex. 2 at 33:19-34:3; 35:8-10.[4] Defendants fail to counter this testimony with their own expert as to what the appropriate due diligence procedures would be; instead, they hold fast to their argument that relying on Plaintiff's previous insurance policies was reasonable due diligence. Dkt. # 115 at 3-5. This is insufficient to carry the day on summary judgment. Defendants' argument also seems to ignore the fact that the valuation increased from $530,000 to $560,095 from year-to-year. Even assuming Defendants' initial estimation of $530,000 in 2012 was "reasonable" because it was based on Plaintiff's prior insurance policy, Defendants do not definitively establish the "reasonableness" of the valuation's $30,000 increase over the three-year span, especially where other data, such as the King County Assessor's data, show the value fluctuating and in some cases dropping. Based on the current record, the Court agrees with Plaintiff that simply because his previous insurance policy

---

[3] As Plaintiff notes, Nationstar's valuation method would also not take into account changes in circumstances. Dkt. # 111 at 12.

[4] Defendants mischaracterize this testimony as seemingly requiring a pre-foreclosure entry of the property, a practice the Washington Supreme Court condemned in *Jordan v. Nationstar Mortg. LLC,* 185 Wash. 2d 876, 374 P.3d 1195 (2016). Dkt. # 115 at 5. But Mr. Arnold's testimony is not so reductive; instead, it generally attests to the need for an insurer to conduct due diligence before force-placing insurance, which they can do by reviewing, for instance, a "[d]escription of the property, location of the property, distance from a fire hydrant, distance from a fire station, outbuildings, garages, age of the systems," and other data points. Dkt. # 114-3 at 39:24-35:2.

with Safeco listed $530,000 as the value of the dwelling, this does not necessarily make it a reasonable estimation of the value of the improvements on the Property.

Defendants' other arguments for summary judgment on this point are similarly unavailing. First, the Court, like others, is not convinced of Defendants' argument that Plaintiff may not assert a breach of contract claim simply because he failed to perform first by neglecting to provide verification of insurance. *See, e.g., Wieck v. CIT Grp., Inc.*, 308 F. Supp. 3d 1093, 1121 (D. Haw. 2018) (plaintiff's breach of contract claim for force-placed hurricane insurance not foreclosed simply because they failed to maintain hurricane coverage under the mortgage); *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289 (C.D. Cal. 2015) (rejecting the contention that "plaintiffs' failure to maintain hazard insurance constitutes a material breach of the mortgage," excusing the defendant's alleged breach); *Persaud v. Bank of Am., N.A.*, 14-21819-CIV, 2014 WL 4260853, at *8 (S.D. Fla. Aug. 28, 2014) ("Contrary to Defendants' argument, the fact [that] Plaintiff initially breached the Mortgage when his insurance policy lapsed does not preclude his breach of contract claim."). As the Court previously held, Defendants were still under an obligation to exercise "reasonable or appropriate" actions in force-placing insurance in the event of Plaintiff's breach. Dkt. # 58 at 11-12. Additionally, the Court is unpersuaded by Defendants' laches argument that Plaintiff unreasonably delayed objecting to the LPI's valuations for three years, despite having full knowledge of their $530,000 valuation and the reasons behind it. Dkt. # 96 at 15-16. The Court agrees with Plaintiff that Defendants have produced little evidence to show they were damaged by Plaintiff's alleged delay in objecting to the valuations. Dkt. # 111 at 18-19.[5]

---

[5] Defendants also contend that even if they did overvalue Plaintiff's Property, the higher valuation did not necessarily lead to higher premiums. Dkt. # 96 at 16. Defendants observe that from 2012-2015, even though the valuation of Plaintiff's improvements rose from $530,000 to $560,095, the annual premiums decreased. *Id*. At this stage, the Court is not convinced that this necessarily means that Plaintiff was not damaged, as the insurance premiums would presumably be lower had Defendants used a lower valuation.

Ultimately, as to Count 11, the Court cannot enter summary judgment for either party based on the current factual record. The record does not provide a reliable basis for this Court to definitively determine that Defendants' valuation methodology was "reasonable" under the Deed of Trust and applicable law. Nor can the Court make the determination that Defendants' valuation methodology is unreasonable as a matter of law, as Plaintiff suggests. Indeed, Plaintiff cites no authority that Washington requires a lender to shop around for the best deal on insurance before force-placing a policy. At this point, the issue of the reasonableness of Defendants' practice is best left for trial.

Accordingly, the Court **DENIES** both Plaintiff's and Defendants' Motions for Summary Judgment as to Count 11. The Court **GRANTS** Defendants' Motion and **DENIES** Plaintiff's Motion as to Count 13, and dismisses this claim.

B. Consumer Protection Act Claim (Count 12)

A Washington Consumer Protection Act ("CPA") claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531, 533 (1986).

Plaintiff's CPA claim essentially turns on whether Defendants' alleged overvaluing of the Property constitutes an unfair or deceptive act or practice. An act is *per se* unfair or deceptive if it violates a statute that declares the conduct at issue to be unfair or deceptive. *Hangman Ridge*, 719 P.2d at 535. Otherwise, "a plaintiff must show the conduct is 'unfair' or 'deceptive' under a case-specific analysis of those terms." *Mellon v. Reg'l Tr. Servs. Corp.*, 182 Wn. App. 476, 488, 334 P.3d 1120, 1126 (2014). "[A]n act or practice can be unfair without being deceptive." *Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 786, 295 P.3d 1179, 1187 (2013). "[A] 'practice is unfair [if it] causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits [to

consumers or to competition].'" *Id.* (alteration in original) (quoting 15 U.S.C. § 45(n)). An act is deceptive if it involves "a 'representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 48, 204 P.3d 885, 895 (2009) (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)).

First, the Court finds that Plaintiff has not shown that Defendants' conduct constitutes a *per se* unfair or deceptive practice under the CPA. Plaintiff argues that the "practice of procuring excessive insurance is [] a per se unfair and deceptive act or practice," citing to RCW 48.27.010. Dkt. # 111 at 20. The Court disagrees with this characterization of the relevant statute. RCW 48.27.010 prohibits an insurer from "compelling" excessive insurance. Defendants did not "compel" Plaintiff to have any excess insurance in this case. Plaintiff was free, at any time, to choose his own insurance policy, and in fact did so in 2015. Plaintiff does not provide any evidence that he was "compelled" to accept the LPI through any force other than his own inaction. Plaintiff also fails to provide any authority applying RCW 48.27.010's prohibition on compulsory excess insurance to LPI cases, where borrowers agree to LPI clauses and may avoid imposition of LPI by purchasing their own insurance policies.

Next, the Court is skeptical that Defendants' actions in this case were not "reasonably avoidable," and thus "unfair" under the CPA. In deciding whether a practice is "unfair," Washington courts have looked to federal law, specifically 15 U.S.C. § 45(n), to test whether the practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits." *Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179, 1187 (2013). Under the federal standards, "[i]n determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice." *FTC v. Neovi, Inc.,* 604 F.3d 1150, 1158 (9th Cir. 2010). An injury is reasonably avoidable if consumers "have reason to anticipate the impending harm and the

means to avoid it," or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012) (*citing Orkin Exterminating Co., Inc. v. FTC,* 849 F.2d 1354, 1365–66 (11th Cir. 1988)).

Here, the harm – the force-placement of an insurance policy based on a purported over-valuation of Plaintiff's Property – was reasonably avoidable because Plaintiff could have avoided it by obtaining his own policy. Plaintiff was free, at any time, to choose his own insurance policy, and in fact did so in 2015, thereby "avoiding" the harm. Plaintiff also had reason to anticipate the impending harm and there is no indication he did not have the means to avoid it. Defendants warned Plaintiff each time before it force-placed an insurance policy, explicitly informing Plaintiff in 2012 about the valuation and coverage to be imposed and provided Plaintiff thirty days to provide proof of his own insurance. Plaintiff's only cogent argument here is that this policy only applies to property owners in default, and that Plaintiff's failed business ventures and financial distress rendered him unable to pay the insurance premiums and default on his loan. Dkt. # 111 at 22-23. However, Plaintiff fails to cite any evidence in the record that explains or corroborates these financial difficulties and does not explain what changed that allowed him to buy insurance himself in 2015. Plaintiff also does not explain why these alleged difficulties would have affected his ability to respond or object to the allegedly improper Property valuations in the LPI policies. The unsupported arguments by Plaintiff's counsel that Plaintiff, and other unidentified theoretical borrowers, would not be able to avoid FPI in the event of default is not sufficient to defeat summary judgment on this point. Dkt. ## 101 at 21. Based on the current record, there is no indication that force-placed insurance was not "reasonably avoidable."

The Court also strains to see how Defendants' conduct is deceptive. In a similar case before Judge Lasnik, *Childress v. Liberty Mutual Fire Insurance Company*, No. C10-059-RSL, 2011 WL 887975 (W.D. Wash. Mar. 11, 2011), plaintiffs sued a

defendant loan servicer under the CPA when the defendant charged them for lender-placed homeowners' insurance. *Id.* at *2. Judge Lasnik found that the defendant had notified plaintiffs that it would secure lender-placed insurance if plaintiffs failed to obtain their own insurance coverage. *Id.* The defendant also informed plaintiffs that the cost of lender-placed insurance would be higher and the coverage less comprehensive and that another defendant might receive a commission in connection with the lender-placed insurance. *Id.* Judge Lasnik concluded that "[i]n light of those disclosures, plaintiffs cannot show that they were deceived or that [defendant's] actions had the capacity to deceive a substantial portion of the public." *Id.* Judge Lasnik thus dismissed the CPA claim on summary judgment. *Id.* at *3.

The situation here mirrors *Childress*. The Deed of Trust explicitly forewarned Plaintiff that if he failed to maintain insurance coverage, Defendants may obtain insurance on its own accord, and this insurance may "significantly exceed the cost of insurance that [Plaintiff] could have obtained." Dkt. # 98, Ex. B, at ¶ 5. Prior to force-placing the ASIC insurance policies, Defendants informed Plaintiff that it intended on doing so, and warned Plaintiff that the coverage it chose could be significantly more expensive than the policies he could obtain on his own. When Plaintiff eventually obtained his own insurance policy in 2015, Defendants ceased the force-placed policies per the Deed of Trust, as they said they would. Even if Defendant's actions resulted in the imposition of a FPI policy based on an improper valuation, this imposition was explicitly disclosed in the Deed of Trust, and adequately disclosed by Defendants during the relevant 2012-2015 time period. As Defendants note, the record shows that Defendants "told [Plaintiff] what [they] were doing, why they were doing it, and how Plaintiff could stop what was being done," which Plaintiff did in 2015. Dkt. # 115 at 10. There is little indication in the record that Plaintiff was deceived, or that this conduct would be deceptive to a substantial portion of the public.

Accordingly, the Court finds that Plaintiff has failed to show that a genuine issue of material fact exists as to the first prong of his CPA claim. The Court also sees significant problems with the public interest prong. Defendants argue that Plaintiff has introduced no evidence that Defendants' valuation of the improvements in this case impacted, or had the potential to impact, the public at large. Dkt. # 96 at 20. Defendants note that the specific conduct at issue, basing property valuations on a borrower's previous home insurance policies, only creates problems when the borrowers themselves over-insure their Property (as Plaintiff admits to doing here), and Plaintiff provides no evidence that such a practice is common. Dkt. # 115 at 11. The Court agrees. Plaintiff also does not provide any evidence that the practice at issue in this case applied, or applies, to any other borrower. In failing to adequately point to evidence in the record supporting his argument as to this prong, and the others, Plaintiff fails to show how his CPA claim escapes summary judgment.

Accordingly, the Court finds that there is no genuine issue of material fact as to Plaintiff's CPA claim. The Court accordingly **GRANTS** Defendants' Motion as to this claim (Count 12) and **DENIES** Plaintiff's Motion. The Court **DISMISSES** this claim.

## IV. CONCLUSION

Based on all the foregoing, the Court **GRANTS IN AND PART** and **DENIES IN PART** the Defendants' Motion for Summary Judgment (Dkt. # 96), and **DENIES** Plaintiff's Motion for Summary Judgment (Dkt. # 101). The Court **GRANTS** Defendants' Motion as to Counts 12 and 13, but **DENIES** it as to Count 11 of Plaintiff's Amended Complaint.

Dated this 14th day of March, 2019.

_Richard A. Jones_

The Honorable Richard A. Jones
United States District Judge

ORDER- 16